**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 16 2014, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RYAN W. TANSELLE**
Capper Tulley & Reimondo
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA P. TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMIAH D. BREEDLOVE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1309-CR-421 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Karen M. Love, Judge
The Honorable Tammy Somers, Magistrate
Cause No. 32D03-0311-FD-180

June 16, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Jeremiah D. Breedlove, contending that the trial court abused its discretion, appeals the trial court's order revoking his probation for Class D felony theft and directing that he serve the remainder of his previously-suspended sentence on work release.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On November 18, 2003, the State charged Breedlove with operating a motor vehicle while intoxicated in a manner that endangers a person, a Class A misdemeanor, operating a vehicle with an alcohol concentration equivalent to at least 0.08 gram of alcohol but less than 0.15 gram of alcohol per one hundred milliliters of the person's blood or two hundred ten liters of the person's breath, a Class C misdemeanor, theft, a Class D felony, public intoxication, a Class B misdemeanor, driving while suspended, an infraction, and driving left of center, an infraction. Pursuant to a plea agreement, Breedlove pleaded guilty to theft, a Class D felony, and his remaining charges were dismissed. The trial court accepted Breedlove's plea agreement and, on April 8, 2004, sentenced him to 545 days with 541 days suspended to probation.

Breedlove's probation order included the following pertinent conditions:

3. You shall report weekly to the Probation Officer unless otherwise directed by your Probation Officer.

. . . .

12. You shall be evaluated for a substance abuse program within forty-five (45) days of today. You shall successfully complete and pay for any program to which you are referred.

. . . .

14. You shall pay [various court costs and probation fees].

*Appellant's App.* at 33.

On June 8, 2005, the State filed a Petition and Notice of Probation Violation. Following a hearing, the trial court determined that Breedlove had violated the terms and conditions of probation by failing to complete a substance abuse treatment program and by failing to pay court costs, fines, attorney fees, and probation fees totaling $975. *Id*. at 61. Breedlove was given the option "to do 20 additional days in jail or four additional months on probation to get his counseling and his fees completed." *Tr.* at 21. Breedlove chose to extend his probation. Accordingly, on August 29, 2005, the trial court entered an order extending Breedlove's probation an additional four months, to February 8, 2006. *Appellant's App.* at 61.

Breedlove failed to attend a scheduled probation appointment on October 5, 2005. Instead, he left a voicemail for his probation officer, Courtney Sacchini, stating that, "he could not report to the appointment because his car had been repossessed." *Tr.* at 21. Sacchini called back and left a message stating that she had rescheduled the appointment and that Breedlove "needed to appear on October 26 of 2005." *Id.* Breedlove again failed to appear, but he did not call to explain or reschedule.

The State filed a second Petition and Notice of Probation violation on November 3, 2005, alleging that Breedlove failed to report to probation appointments as directed, failed to obtain a substance abuse evaluation and complete treatment, and failed to pay $530 in probation fees. *Appellant's App.* at 63. The next day, the trial court issued a warrant for Breedlove's arrest. In July 2006, Sacchini checked her file and discovered that the warrant

was still active. *Tr*. at 22. A call to the local jail confirmed that Breedlove's warrant had not been served. On July 19, 2006, Sacchini called Breedlove at the same phone number, discovered that he was living in Florida, and notified him that "he had an active warrant." *Id*. Breedlove assured Sacchini that he planned to come back to Hendricks County the next month to turn himself in. *Id*. Sacchini's files revealed that July 19, 2006 was the last time that she spoke with Breedlove.

The case lay dormant until December 3, 2012, when the State filed a motion to amend and reissue the warrant, indicating that the State was still interested in prosecuting Breedlove for the violation. *Appellant's App.* at 77. Breedlove was arrested on May 22, 2013. An evidentiary hearing was held on August 28, 2013, at which Breedlove admitted to having violated the conditions of his probation as stated in the Petition and Notice of Probation Violation. *Tr*. at 6, 8-10. The trial court found that Breedlove violated his probation and sentenced him to 493 days[1] executed in the Indiana Department of Correction to be served on home detention, if eligible. *Appellant's App*. at 88. Breedlove was found ineligible for home detention, and on September 12, 2013, the trial court amended his sentence and ordered him to serve 493 days on work release. *Id.* at 96, 101. Breedlove now appeals.[2]

---

[1] Calculating the time remaining on Breedlove's probation, the trial court subtracted 48 days of credit time from the original 541 days that had been suspended to probation, which left 493. *Tr*. at 28, 31.

[2] In his brief, Breedlove stated, "[H]e is presently scheduled to be released from the Hendricks County Work Release Center on May 15, 2014." *Appellant's Br*. at 5

## DISCUSSION AND DECISION

Breedlove contends that the trial court abused its discretion when it revoked his probation and ordered him to serve his previously-suspended sentence in its entirety.[3] Specifically, he contends that he was "genuinely rehabilitated by his prior period of probation," mitigating circumstances explained his probation violation, and he had not committed any additional criminal offenses.

As this court recently noted:

> Probation revocation is a two-step process. *Cox v. State*, 850 N.E.2d 485, 488 (Ind. Ct. App. 2006). First, the court must make a factual determination that a violation of a condition of probation has occurred. *Id.* When a probationer admits to the violation, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. *Id.* At this step, the probationer must be given an opportunity to present evidence that explains and mitigates his violation. *Id.*

*Alford v. State*, 965 N.E.2d 133, 134-35 (Ind. Ct. App. 2012), *trans. denied*.

Upon the revocation of probation, a trial court may impose one or more of the following sanctions: (1) continue the person on probation, with or without modifying or enlarging the conditions; (2) extend the person's probationary period for not more than one year beyond the original probationary period; or (3) order execution on all or part of the sentence that was suspended at the time of initial sentencing. Ind. Code § 35-38-2-3(g). A trial court's sentencing decisions for probation violations are reviewable for an abuse of

---

[3] Breedlove does not argue that the trial court abused its discretion by ordering him to serve his suspended sentence on work release. Initially, Breedlove argued that the trial court abused its discretion by sentencing him to the Hendricks County Work Release Facility. *Appellant's Br*. at 10. The State responded, saying, "By requesting for the trial court to place [him] in work release, [Breedlove] has invited any error created by such placement." *Appellee's Br*. at 5. However, in his reply brief, Breedlove clarified that he "did not challenge the specific imposition of work release . . . rather, [he] challenged the trial court's determination to revoke his suspended sentence in its entirety . . . ." *Appellant's Reply Br*. at 1.

discretion. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id*.

During the evidentiary hearing, Breedlove admitted that he violated his terms of probation by failing to complete a required drug counseling program and by failing to pay $530 in fees. *Tr*. at 6, 8-10. The trial court then gave Breedlove the opportunity to present evidence to explain and mitigate the violation. Breedlove testified that his last conversation with Sacchini led him to believe he "was off of probation" when he was in Florida. *Id*. at 8. Breedlove asserted that he had changed since 2005 and had not been in criminal trouble in the last eight years. *Id*. at 9. He also said that he had worked as an iron worker, but is now unable to work due to an injury. *Id*. Instead, Breedlove cares for his nine-year-old child as a stay at home father while his wife works. *Id*. Finally, Breedlove commented, "I'm the person that you guys want us to be when we leave here from you." *Id*.

At the close of the hearing, the trial court reiterated its finding that Breedlove had violated his probation and ordered that he serve the "remainder of the sentence." *Id*. at 29. As explanation, the trial court addressed Breedlove as follows: "I agree with your attorney it's a good thing that you have not been in trouble, however[,] there's been testimony[,] which I believe[,] that you knew that you were still on probation and you needed to turn yourself in and you didn't turn yourself in sir so I can't reward that conduct, do you understand?" *Id*. at 30. Breedlove responded that he understood. *Id*.

After Breedlove admitted that he had violated his probation, the trial court provided him with an opportunity to explain why his punishment should be lenient. The trial court

heard that Breedlove had not been arrested since 2005, had a family and, as a stay at home father, provided care for his nine-year old child while his wife worked. In defense of having violated his probation, Breedlove testified that he believed he had successfully completed his probation. *Id.* at 8. In contrast, Sacchini testified that she called Breedlove on July 19, 2006 and notified him that "he had an active warrant." *Id.* Breedlove assured Sacchini that he planned to come back to Hendricks County the next month to turn himself in. *Id.* Sacchini's files revealed that July 19, 2006 was the last time that she spoke with Breedlove.

The trial court found Sacchini's testimony to be more credible. Noting that Breedlove could not be rewarded for failing to turn himself in on an active warrant for a probation violation, the trial court sentenced him to serve the remainder of his previously-suspended sentence on work release. This decision is not clearly against the logic and effect of the facts and circumstances. Breedlove's argument on appeal is essentially a request that we reweigh the evidence. This we cannot do. *See Mogg v. State*, 918 N.E.2d 750, 755 (Ind. Ct. App. 2009) (in determining whether trial court abused its discretion, we do not reweigh evidence and consider conflicting evidence in light most favorable to trial court's ruling). Accordingly, the trial court did not abuse its discretion when it revoked his probation and ordered Breedlove to serve the remainder of his previously-suspended sentence.

Affirmed.

MAY, J., and BAILEY, J., concur.